UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| FRISCO AUTO ACQUISITIONS, INC. et al., <br><br>   Plaintiffs, <br><br> v. <br><br> FCA US, LLC, <br><br>   Defendant. | Case No. 24-13431 <br> Honorable Laurie J. Michelson |

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS [19]**

Plaintiffs—an automotive dealership, dealership acquisition group, and its principals—own and operate Chrysler Dodge Jeep Ram dealerships across the country. (*See* ECF No. 12.) Defendant, FCA US LLC, manufactures the cars for those dealerships. (*Id.*) In 2024, Plaintiffs filed this breach of contract lawsuit against FCA regarding an agreement to establish a new dealership. (*See* ECF Nos. 1, 12.) In response, FCA has filed a motion to dismiss, arguing, in part, that this lawsuit is foreclosed by covenants not to sue. (*See* ECF No. 19.)

For the reasons that follow, the Court DENIES FCA's motion to dismiss (ECF No. 19).

**I.**

Because this is a motion to dismiss, the Court recites the facts as alleged in the complaint. *See Savel v. MetroHealth Sys.*, 96 F.4th 932, 937 (6th Cir. 2024).

Around 10 years ago, FCA planned to establish two new dealerships near Plaintiffs' existing dealership in Frisco, Texas. (ECF No. 12, PageID.132.) These new dealerships would compete with Plaintiffs', so, as franchisees, Plaintiffs exercised their rights under Texas law to protest[1] the establishment of the competing dealerships. (*Id.*)

In 2017, the parties settled that dispute by entering into an Agreement of Settlement, General Release and Covenant not to Sue ("2017 Agreement"). (*Id.*) That Agreement attached a Letter of Intent under which Plaintiffs would receive a new dealership, the Villages Dealership in Florida, in exchange for withdrawing their protest to the competing Texas dealerships. (*Id.* at PageID.135, 161–167 (LOI To Close Open Point (the "LOI")).) If Plaintiffs completed certain conditions precedent, FCA would properly notice the establishment of the Villages Dealership to other franchisees, and, if it was protested by another dealer, the LOI required FCA to defend the Villages Dealership up and through a final administrative hearing. (*Id.* at PageID.132, 135, 162.) The 2017 Agreement provided that if the Plaintiffs were prevented from opening the Villages Dealership, FCA was required to provide them with a ten-year right of first refusal on a new dealership. (*Id.* at PageID.136, 139; ECF No. 12-1, PageID150 ("[i]f [Plaintiffs are] prevented from opening the New Dealership because of a successful protest to the establishment of the New Dealership, then FCA . . . will for a ten (10) year period . . . provide [them] a right of first refusal").) In sum, the 2017 Agreement "required FCA to support the addition of

---

[1] In industry-speak, they initiated an "Add Point Protest." (*Id.* at PageID.131.)

[Plaintiffs'] Villages Dealership through litigation, and should it not be successful, a mechanism was specifically created to make sure Plaintiffs would still benefit from an award of another CDJR franchise." (*Id.* at PageID.136.)

Sure enough, other dealerships protested the establishment of the Villages Dealership. (*Id.* at PageID.137.) And pursuant to its obligation under the 2017 Agreement, FCA defended against the protests—at first. (*Id.*) But then it changed its mind. FCA withdrew the notices to establish the Villages Dealership claiming it did so based on ". . . expert opinion, underlying data, and relevant circumstances." (*Id.* at PageID.138.)

So Plaintiffs were prevented from opening the Villages Dealership. (*Id.*) And to date, Plaintiffs say FCA has failed to offer a suitable "open point" for a new CDJR dealership. (*Id.* at PageID.140.) This is so despite FCA offering and establishing dealerships with other dealer groups. (*Id.*)

Plaintiffs contend that FCA's conduct breached the parties' 2017 Settlement Agreement and attached Letter of Intent. For its part, FCA says the complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) and should be dismissed. The motion is fully briefed and does not require further argument. *See* E.D. Mich. LR 7.1(f).

## II.

In deciding FCA's motion to dismiss, the Court accepts as true Plaintiffs' well-pled allegations and draws all reasonable inferences in their favor. *See Thomas v. Montgomery*, 140 F.4th 335, 339 (6th Cir. 2025). "[T]he Court should not accept

3

conclusions of law or unwarranted inferences of fact cast in [the] form of factual allegations." *Han v. Univ. of Dayton*, 541 F. App'x 622, 625 (6th Cir. 2013). Plaintiffs' "factual allegations . . . must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). The "complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Han*, 541 F. App'x at 626.

In this diversity case, the parties agree that Michigan law applies to Plaintiffs' breach of contract claims. (ECF No. 12, PageID.152, 167.) To state a claim for breach of contract under Michigan law, Plaintiffs must allege "the existence and terms of a contract, that the defendant breached its terms, and that the breach caused damages to the plaintiff." *Van Buren Charter Twp. v. Visteon Corp.*, 904 N.W.2d 192, 202 (Mich. Ct. App. 2017) (citing *Miller-Davis Co. v. Ahrens Const.*, Inc., 848 N.W.2d 95, 104 (Mich. 2014)).

Plaintiffs raise two claims. First, that FCA breached the LOI by withdrawing its notices proposing the establishment of the Villages Dealership. (ECF No. 12, PageID.142.) And second, that FCA breached the right of first refusal provision in the 2017 Agreement by failing to offer Plaintiffs other dealership franchises, or opportunities for franchises, which it has offered to other dealers. (*Id.* at PageID.143–144.) And they ask for damages related to these alleged breaches. (*Id.* at PageID.143, 145.)

FCA contends that neither theory states a plausible claim because Plaintiffs either covenanted not to sue, sued too early, or failed to allege non-speculative damages. (*See generally* ECF No. 19.)

### A.

Start with Plaintiffs' claim that FCA breached the Letter of Intent.

A letter of intent may be "just as valid as any other contract." *Opdyke Inv. Co. v. Norris Grain Co.*, 413 Mich. 354, 359 (1982); *Busch v. Dyno Nobel, Inc.*, 40 F. App'x 947, 954 (6th Cir. 2002). And the Court's "goal in contract interpretation is to give effect to the intent of the parties, to be determined first and foremost by the plain and unambiguous language of the contract itself." *Wyandotte Electric Supply Co. v. Electrical Technology Sys., Inc.*, 499 Mich. 127, 143-144 (2016). Indeed, "[w]hen contractual language is unambiguous, courts must interpret and enforce the language as written because an unambiguous contract reflects, as a matter of law, the parties' intent." *Harper Woods Retirees Ass'n v. City of Harper Woods*, 312 Mich. App. 500, 508 (Mich. Ct. App. 2015).

So the Court starts with the contract language. With respect to establishing the Villages Dealership in Florida for the Plaintiffs, the LOI states, in relevant part:

> If any protest, including under state law, lawsuit or other legal challenge of any kind, including without limitation, an administrative proceeding, arbitration or mediation is filed or demanded (collectively a 'Challenge'), opposing the proposed establishment of Your dealership, FCA US will commit to defend the Challenge up and through a final hearing before an Administrative Law Judge at the Florida Division of Administrative Hearings, including through the entry of a final order. FCA US in its sole discretion will determine whether it will take or defend an appeal. FCA US may also settle a Challenge on any terms deemed advisable by FCA US.

5

(ECF No. 12-1, PageID.162.)

This unambiguous language contemplates that other existing dealers might protest the opening of the Villages Dealership and that FCA could lose in the administrative proceeding. The LOI affords FCA discretion on whether to appeal such a loss. And it allows FCA to settle protests on its own terms. But what it did not allow FCA to do, says Plaintiffs, was to "withdraw the notices [establishing the Villages Dealership] and moot the protests." (ECF No. 22, PageID.270–271; *see also* ECF No. 12, PageID.142 ("FCA did not defend or settle the action as required under the LOI, but instead withdrew its notices proposing the establishment of the Villages Dealership prior to a final hearing or final order.").) In so doing, Plaintiffs claim that FCA breached the LOI. The Court finds Plaintiffs' claim to be plausible and supported by the plain language of the agreement (ECF No. 12-1, PageID.162).[2]

FCA pushes back by pointing to the covenant not to sue in the parties' LOI that it believes precludes Plaintiffs' claim. (ECF No. 19, PageID.237; ECF No. 23, PageID.282.) More specifically, FCA relies on Paragraph 11, which states as follows:

> You understand that the opportunities presented by this LOI entail financial and other forms for risk (including the loss of a substantial Investment), and You assume such risk by agreeing to the terms of this LOI. You understand that all actions taken in furtherance of the obligations contained within this LOI are taken at Your risk. You agree that FCA US will not be held responsible for financial loss, opportunity loss or other damages (in any form) caused to You arising from or associated with the terms, obligations, conditions and/or purpose of this LOI, and FCA US will have no obligation to You for any expenditures that You may make fulfilling or attempting to fulfill the requirements

---

[2] Plaintiffs contend that even if FCA did not violate the terms of the contract, it violated the implied covenant of good faith and fair dealing. (ECF No. 22, PageID.271.) The Court need not wrestle with this issue at this time.

6

> In this LOI, including acquiring or selling property, constructing or renovating the Facility or making any changes to existing buildings. *You further agree and covenant not to sue FCA US for any damages You may suffer by reason of taking any action in reliance upon this LOI, in the event FCA US terminates this LOI and, in so doing, fails or refuses to enter into the Agreements with You.*

(ECF No. 12-1, PageID.167) (emphasis added).

On its face, however, this covenant does not preclude Plaintiffs from suing FCA for lost profits—as opposed to reliance damages—arising out of its breach of other provisions of the LOI. As Plaintiffs interpret it, this provision is about "assigning the business risk inherent with a letter of intent" by prohibiting lawsuits over "'expenditures' made to fulfill the LOI" such as 'acquiring or selling property, constructing or renovating the Facility, or making changes to existing buildings,'" should FCA terminate the LOI. (ECF No. 22, PageID.273.) And Plaintiffs' narrow claim that FCA failed to properly fight the protest against the Villages Dealership does not run afoul of the covenant. They do not seek damages for their actions taken in reliance on the LOI (or for FCA's termination of the LOI) but instead wish to obtain the benefit of their bargain.

Plaintiffs further contend that if the Court reads Paragraph 11 of the LOI to preclude a claim against FCA for intentionally breaching the LOI by withdrawing the notices establishing the Villages Dealership, the LOI would be illusory. (ECF No. 22, PageID.271–273.) *See Amir v. AmGuard Ins. Co.*, 606 F. Supp. 3d 653 (E.D. Mich. 2022) (explaining that under Michigan law, an "'illusory contract' is an agreement in which one party gives as consideration a promise that is so insubstantial as to impose no obligation, and the insubstantial promise renders the agreement unenforceable.")

7

(applying Michigan law); *Rudzinski v. Rudzinski*, No. 355312, 2022 WL 722943, at *4 (Mich. Ct. App. Mar. 10, 2022) (finding an illusory promise where one side has full discretion on whether or not to perform their end of the bargain) (citing *Mastaw v Naiukow*, 105 Mich App 25, 29; 306 NW2d 378 (1981)). And "traditional principles of contract law" instruct courts to "avoid constructions of contracts that would render promises illusory because such promises cannot serve as consideration for a contract." *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 440 (2015).

At this stage of the case and taking the well-pled factual allegations in the complaint as true, the Court finds that Plaintiffs have stated a plausible claim for breach of the LOI, even considering the covenant not to sue.[3]

## B.

Next, Plaintiffs assert that FCA breached the right of first refusal provision in the 2017 Agreement. This provision, alleges Plaintiffs, "was intended as a guaranty that Plaintiffs would get an additional, acceptable, FCA dealership even if the effort to establish the Villages Dealership did not result in Plaintiffs receiving the dealership." (ECF No. 12, PageID.136.)

In accordance with the principles of contract interpretation set forth above, the Court starts with the relevant text of the 2017 Agreement:

> If the Greenway Entity is prevented from opening the New Dealership because of a successful protest to the establishment of the New Dealership, then FCA US or its successor or assign will for a ten (10) year period from the effective date of this Agreement provide Greenway a right of first refusal . . . if FCA US determines, in its sole business

---

[3] So the Court does not need to definitively rule on whether the contract is or would be illusory.

8

> judgment, to attempt to add a dealer for the CJDR vehicle lines with a planning potential of at least 1000 ("Open Point"), FCA US will provide Greenway the right of first refusal ("ROFR") to become the candidate for the Open Point, and Greenway will have thirty (30) calendar days to accept or reject the offer . . . The ROFR is not transferable or assignable to any other party or entity and only applies to Greenway. Following the expiration of the ten (10) year ROFR, if Greenway has not received an additional dealership by the terms of this Agreement, thereafter FCA agrees to work in good faith to help Greenway receive an additional point.

(ECF No. 12-1, PageID.150–151.)

Plaintiffs allege that FCA breached this provision by failing to provide them with a suitable dealership. More specifically, they say FCA granted dealerships to other dealers without first making them available to Plaintiffs, provided only inadequate options to Plaintiffs that fell below the contract standard, and continue to maintain "open points" (an area for an additional dealership) which have not been offered to Plaintiffs. (ECF No. 12, PageID.143–144.)

FCA says this fails to state a claim for two reasons. Neither persuades.

First, FCA says the claim is premature. (ECF No. 19, PageID.233–234.) According to FCA, this right of first refusal provision gives them 10 years to provide Plaintiffs with a suitable open point. (ECF No. 19, PageID.233–234.) True. But if, during that 10-year period, FCA breaches the terms of the provision, nothing in the contract states that Plaintiffs must wait until 2027 to sue.

Indeed, "[a]greements granting rights of first refusal are enforceable." *See Coates v. Bastian Bros., Inc.*, 276 Mich. App. 498, 504 (Mich. Ct. App. 2007). The text of the 2017 Agreement makes clear that the obligation to provide Plaintiffs with the ROFR begins "from the effective date," of the agreement, not at the close of the 10

9

years. (ECF No. 12-1, PageID.150.) Thus, once FCA decided to establish a new open point, Plaintiffs' ROFR was triggered. Plaintiffs have pled the myriad ways in which they believe the right was not properly extended to them. The Court has been given no persuasive reason why they cannot assert that claim now.

Second, FCA says that the release and covenant not to sue in the 2017 Agreement precludes Plaintiffs' claims. The Court turns again to the plain text. The release in Section 2 states, in relevant part:

> Frisco hereby forever releases, acquits, and discharges FCA US . . . from all claims, demands, obligations, judgments, actions, causes of action, liens, and liabilities for losses or damages, whether personal, property, or economic, arising out of the issues raised in *the Protests.*

(ECF No. 12-1, PageID.151) (emphasis added). Likewise, the covenant not to sue in Section 4 of the agreement states, in relevant part:

> Greenway, and Frisco covenant and agree that neither they nor any of their agents, attorneys, employees, representatives, assigns, heirs, or successors in interest will commence any legal or administrative proceeding against any person or entity in order to assert any allegation, claim, or cause of action in any way based on, arising out of the issues raised in *the Protests.*

(*Id.* at PageID.151) (emphasis added).

"The Protests" are a defined term in the Agreement. They specifically refer to the two protests that Plaintiff Frisco filed with the Texas Department of Motor Vehicles against FCA's establishment of proposed competing CDJR dealerships in Prosper and Dallas, Texas. (ECF No. 12-1.) Thus, "the issues raised in the Protests" clearly refers to Plaintiffs' challenge to FCA opening certain dealerships in Texas that caused Plaintiffs' concern. At the time Plaintiffs filed the Protests, the ROFR did not

even exist. In other words, by agreeing not to sue over issues related to the two Texas dealerships, Plaintiffs did not give up their right to sue over breach of the ROFR provision involving future dealerships in other parts of the country.

Thus, Plaintiffs adequately plead that FCA breached the 2017 Agreement by failing to provide a ROFR for a suitable CDJR dealership even considering the release and covenant not to sue.[4]

### C.

Finally, FCA seeks dismissal of Plaintiffs' breach of contract claims on the ground that lost profit damages from a dealership that was never established are too speculative. (*Id.* at PageID.238–239.)

FCA sets forth the correct law. Damages for breach of contract reflect "the pecuniary value of the benefits the aggrieved party would have received if the contract had not been breached." *Doe v. Henry Ford Health Sys.*, 308 Mich. App. 592, 601 (Mich. Ct. App. 2014) (citing *Ferguson v. Pioneer State Mut. Ins. Co.*, 273 Mich. App. 47, 54 (Mich. Ct. App. 2006)). The party claiming breach may only recover damages "that are the direct, natural, and proximate result of the breach" not those that are "conjectural or speculative in their nature . . ." *Id.* The issue at this stage of the case, though, is whether Plaintiffs have adequately pled damages, not whether they have proved them.

---

[4] Because the Court permits the claimed breach of the 2017 Agreement to proceed (ECF No. 22, PageID.266), it will not decide the alternatively-pled anticipatory breach claim at this time.

11

"Even if damages are often not required to be pled with specificity or in detail, the standards articulated in *Twombly* and *Iqbal*, require that the claim set forth at least some factual basis upon which the existence of damages can be plausibly inferred." *Duro Corp. v. Canadian Stds. Assoc.*, No. 17-1127, 2018 U.S. Dist. LEXIS 105907, at *9 (N.D. Ohio June 25, 2018). With respect to losing the Villages Dealership and not yet being given a viable alternative, Plaintiffs allege the Dealership "was worth millions of dollars in intrinsic value" and would have "enabled [them] to earn millions in annual profits which it has now lost," not to mention the competing dealerships in Texas that have hurt their profits because they withdrew their Protests in exchange for the Villages Dealership.[5] (ECF No. 12-1, PageID.141.) This is a plausible, compensatory damage flowing from the alleged breaches. It is true that Plaintiffs could have described the value of the Villages Dealership in more detail. But considering the allegations as a whole, including the provisions in the LOI and 2017 Agreement that are attached to the complaint, the Court can reasonably infer that there was value to Plaintiffs in obtaining another CDJR dealership from FCA, whether in Florida or someplace else, and that they suffered damages from not getting one or being given the proper opportunity to obtain one. They have pled sufficient damages to state plausible breach of contract claims.

---

[5] This damages claim may be precluded by the release and covenant not to sue in the 2017 Agreement, although the Court need not decide that issue at this point in the case.

12

## III.

For these reasons, Plaintiffs have pled facially plausible breach of contract claims. Accordingly, the Court DENIES FCA's motion to dismiss (ECF No. 19).

IT IS SO ORDERED.

Dated: January 27, 2026

                                                s/Laurie J. Michelson
                                                LAURIE J. MICHELSON
                                                UNITED STATES DISTRICT JUDGE